# CHARLES DUSHAW v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 23, 1923.

No. 23,480.

**Scaffold in defendant's car shop unsafe.**
1. The evidence warranted the jury in finding that a scaffold provided by defendant for the use of its employes while remodeling a car in its shops was not safe.

**Proof of causal connection with injury need not be by direct evidence.**
2. The evidence would warrant an inference by the jury that plaintiff was on the scaffold when he fell and that its unsafe condition was a proximate cause of his injury. Plaintiff had the burden of establishing causal connection between the negligence alleged and the injury suffered, but was not required to establish it by direct evidence.

**Assumption of risk by plaintiff question for jury.**
3. Whether plaintiff assumed the risk incident to the use of the scaffold was a question for the determination of the jury. He had the right to act on the assumption that defendant would see that the scaffold was kept safe for use to the extent of discovering and remedying an unsafe condition, if it arose after the scaffold was constructed and would not be obvious to those who used it.

Action in the district court for Stearns county to recover $50,000 for personal injuries. The case was tried before Roeser, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $10,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*F. G. Dorety* and *A. L. Janes*, for appellant.
*Donohue & Quigley*, for respondent.

LEES, C.
This is an action for damages for personal injuries sustained by plaintiff while employed by defendant as a car repairer in its St. Cloud shops. The jury returned a verdict in plaintiff's favor and de-

[1]Reported in 195 N. W. 893.

fendant has appealed from an order denying its motion in the alternative for judgment or a new trial.

On December 15, 1921, one of defendant's baggage cars was placed in the shops to be remodeled. Work on the car began on December 21. Plaintiff, a car carpenter with 9 years experience, worked on the car until January 17, 1922, when he was injured.

To enable the men to do their work, a scaffold was built on either side of the car. It was constructed by plaintiff and two other car carpenters, one of whom acted as foreman. The scaffold on the north side of the car is the one involved. It consisted of A-shaped ladders set alongside the car, with planks laid on the top round of the ladders. The ladders were 9 feet high and the edge of the roof of the car was about 3 feet higher. To raise the scaffold at the west end of the car, blocks of wood were placed on the planks where they rested on the ladders and another plank 12 or 14 feet long was laid on the blocks. The blocks were 6 inches thick, and this brought the plank they supported above the tops of the side pieces of the ladders. The plank was not nailed to the blocks and they were not nailed to anything beneath them. One of the blocks was set diagonally between the side pieces of the ladder because it was too long to go between them. At one end of the topmost plank a piece 2 feet long and 4 inches wide had been cut out. This end of the plank was either on or extended over the long block and the block was on the west ladder. The ladders were braced to keep them from slipping. The brace on the west ladder was a piece of siding 7 or 8 feet long, with one end nailed to a post. The men stood on the scaffold while at work and also used it to get upon or descend from the roof of the car when work was to be done there. There was an ordinary ladder at one end of the car, which they also used to get on or off the car.

The accident happened between 9 and 10 o'clock in the forenoon. No one saw plaintiff on the scaffold that morning, but he was seen on the roof of the car by several witnesses. A tinner, engaged in soldering the seams in the roofing, stood on a plank 5 or 6 feet east of the one supported by the blocks of wood. Feeling a vibration in the scaffold, he looked to the west and saw plaintiff falling between the

scaffold and the car. He was half way to the floor and was falling with his feet foremost and his back toward the car. The long block was also falling and struck the floor about 2 feet east of him. The plank which had rested on the blocks also fell, the west end striking the floor beside the plaintiff while the other end remained on the ladder. After the accident it was discovered that the brace attached to the west ladder was torn from the post and the ladder tipped away from the car. The space between the scaffold and the side of the car was about 18 inches. The roof of the car was round, had been covered with tin the day before the accident, and was slippery.

Plaintiff was placed on the witness stand and the attorneys for both parties attempted to obtain his testimony, but without success. It seems that since the accident he has been unable to understand or answer ordinary questions put to him, and we are therefore asked to indulge in the same presumption as in death cases, viz., that he exercised due care to avoid injury.

The court denied defendant's motion for a directed verdict, made at the close of the evidence, refused to instruct the jury that there was no evidence which would justify them in finding that plaintiff was on the scaffold at the time he fell, and submitted these issues for their determination: Whether defendant was negligent in furnishing and maintaining the scaffold in question; whether the alleged negligence was the proximate cause of plaintiff's injury; whether he assumed the risk incident to the use of the scaffold, and whether he himself had been negligent, with proper instructions as to the measure of damages if he had.

On this appeal, three questions are raised by defendant:

1. The first is whether there was sufficient evidence to warrant the jury in finding that the scaffold was not safe for use. It is familiar law that a master is bound to exercise reasonable care to furnish his servants with a reasonably safe place for doing their work and that his duty in this regard is absolute and continuous. 2 Dunnell, Minn. Dig. §§ 5869, 5870, 5871.

Section 3874, G. S. 1913, contains the following language:

"Whenever practicable, all scaffolds * * * constructed * * * for the use in erection, repairing [or] alteration * * * of any

* * * structure, shall be erected and constructed in a safe, suitable and proper manner [so] * * * as to give proper and adequate protection to * * * any person * * * employed or engaged thereon."

As to scaffolds, the statute abolished the fellow servant doctrine of the law of negligence. Block v. Minnesota F. B. & T. Co. 128 Minn. 71, 149 N. W. 954. But that aside, as a common carrier owning and operating a steam railroad, defendant was liable for the negligence of plaintiff's fellow servants. Riley v. Minneapolis & St. L. R. Co. 132 Minn. 195, 156 N. W. 272; Seamer v. Great Northern Ry. Co. 142 Minn. 376, 172 N. W. 765.

The men engaged in remodeling the car used the scaffold from December 21 to January 17. Those called as witnesses testified that until the accident it appeared to them to be safe and solid. It may have been until the day of the accident, but this would not establish its safety on that day. Five tinners worked about the car the day before. Their foreman testified that he inspected the scaffold carefully before he began his work, and found nothing to indicate that it was not secure and safe to go upon. He and one of his crew were on the plank which fell the next day. They carried sheets of tin to the place where they worked and laid them on this plank. It may be that, when their day's work was finished, the plank was not in the same position as in the morning. The conditions disclosed by the evidence warrant the inference that the scaffold was not firm and stable when the accident happened. All the members of the court concur in the opinion that the facts and circumstances made the question of defendant's negligence one for the jury within the rule formulated by Mr. Justice Mitchell in Abbett v. Chicago, M. & St. P. Ry. Co. 30 Minn. 482, 16 N. W. 266, and followed ever since.

2. The close question in the case, upon which there is a division of opinion, is whether the alleged negligence was the proximate cause of plaintiff's injury. It could not be unless he was on the scaffold when the plank fell. Was there evidence to warrant the jury in finding in plaintiff's favor on this issue? A majority of the court are of the opinion that the question should be answered in the affirmative. The evidence showed that, at the time of the accident,

plaintiff had unfinished work to do which could be done from the scaffold, and also had work to do on the roof of the car. It was important to ascertain where he was working immediately before the accident. One witness testified that he saw plaintiff on the car about half an hour before; another, that "between ten or twenty minutes or something like that" before the accident he saw plaintiff on top of the car fastening the running board to the roof. The tinner, already mentioned, testified that he saw plaintiff walk over the top of the car and at work on the west end of the roof and that he last saw him about half an hour before he fell. If plaintiff was on the roof until he fell, it is strange that the tinner did not see him there during the half hour preceding the accident, for, while doing his work, he was in a position where he could hardly have failed to observe him. If plaintiff fell from the roof and his body struck the plank or block, or if he attempted to descend from the roof by way of the scaffold and missed it and fell, it would seem that the plank and block would have been thrust away from the car and that they would not have fallen between it and the ladders. Moreover, it is difficult to understand why the tinner failed to hear anything if plaintiff fell from the roof and struck the scaffold so violently as to tip the ladder part way over and tear the brace from the post.

The circumstance which most strongly indicated that plaintiff was not on the scaffold was the position in which he fell. He would have to face the car if he was at work on it, and defendant properly makes much of the fact that his back was toward the car as he fell. A majority of the court do not think this is so inconsistent with the claim that plaintiff fell from the scaffold as to defeat a recovery. An inanimate object will fall in the same way whenever the circumstances are the same. But, when a man finds himself falling, he instinctively tries to save himself and in so doing may get into surprising and unexpected positions. This was merely one of a number of circumstances to be considered by the jury in determining whether plaintiff fell from the scaffold or from the roof of the car.

Of course the jury were not at liberty to conjecture how the accident happened. Plaintiff must show causal connection between the

negligence alleged and the injury suffered. But plaintiff was not required to establish it by direct evidence. If the circumstances furnished a basis not only for the inference that the accident may have happened as alleged, but also for the inference that it did so happen, and the court is of the opinion that it did, the verdict did not rest on mere conjecture. The cases in which juries have been permitted to infer causal connection between defendant's alleged negligence and plaintiff's injury are collected in Hurley v. Illinois Cent. R. Co. 133 Minn. 101, 157 N. W. 1005, and Thompson v. Minneapolis & St. L. R. Co. 133 Minn. 203, 158 N. W. 42.

3. Defendant's final contention is that the plaintiff assumed the risk incident to the use of the scaffold. In support of the contention it is said that he assisted in its construction; that he must have known that the plank was not nailed to the blocks and that a piece had split off; that the scaffold was a simple instrumentality and he was an experienced carpenter, and hence he must have appreciated the risk to which he was exposed. This issue was one for the determination of the jury. The scaffold was in daily use. It may have been safe enough when it was erected, but unsafe when plaintiff was injured. He had the right to rely to some extent upon the performance by defendant of its duty to keep the scaffold safe for the use of its employes. It could hardly be expected that, before going upon it from day to day, plaintiff would inspect it to ascertain whether the ladders were in their proper position, the braces fast, and the blocks and plank where they had been placed originally. The scaffold was not such a simple instrumentality that, if it became unsafe, it would be obvious to anyone. Plaintiff might act on the assumption that defendant would see that it was kept safe, at least to the extent of discovering and remedying a dangerous condition not obvious to those using it. 2 Dunnell, Minn. Dig. § 5981.

It is not necessary to determine whether assumption of risk would be available as a defense if there was a violation of the statute relating to scaffolds. On its face, section 4, chapter 187, p. 254, Laws 1915, is broad enough to deprive a railroad company of that defense in a case like this, but the question is an important one and should not be decided until it is squarely presented.

Order affirmed.