## DON FITCH v. CITY OF BLUE EARTH.[1]

April 11, 1930.

No. 27,742.

[1]Reported in 230 N. W. 469.

*E. H. Nicholas* and *Putnam & Carlson,* for appellant.
*Frundt & Morse,* for respondent.

OLSEN, C.

Plaintiff, as administrator, brought suit to recover damages for the death of his son, Ronald Fitch, and recovered a verdict. A

motion by defendant for judgment notwithstanding the verdict was granted, and plaintiff appeals from the judgment entered in pursuance thereof. Judgment was so ordered on the sole ground that the deceased, Ronald Fitch, was guilty of contributory negligence as a matter of law.

The defendant city operates and maintains an electric light and power plant from which it furnishes electric current for lighting and other residential purposes to homes in the city. The duty rests upon the city properly to construct, maintain, operate, safeguard and keep in repair its fixtures, wires, transformers, poles and appliances outside of dwellings and buildings, so as properly to transmit the electric current from its plant to the various dwellings and buildings wherein it is to be used. The electric current goes out from the plant over what is known as primary wires, carrying a current of some 2,300 volts. Transformers are placed upon poles in or along the primary lines at proper intervals, and wires from these transformers run into the dwellings to be served thereby. These transformers, when properly operating, produce and transmit over the wires leading into dwellings a current of some 110 to 120 volts, the voltage suitable for and ordinarily used in electric lighting. The defendant had no duty to perform in reference to wiring or electric fixtures inside the dwellings, or any duty to inspect wires, fixtures or appliances therein.

The deceased was a young man about 23 years of age and lived at home with his parents. The father had been superintendent of the city light plant for several years but had ceased to be so employed some years ago. The son had been interested in and had made some study of electricity. He had ability as a mechanic, had constructed his own radio set and also a radio broadcasting apparatus, and had been operating these sets. He had a fairly good working knowledge of electricity and electric appliances. His radio receiving set was operated by batteries, and he had two batteries so that one could be charged while the other was in use. In the basement of the dwelling house he had installed a battery charger or rectifier and connected it with the electric light wires

in the house. This battery charger, when in proper operation, changed the electric current coming in over the house wires from an alternating to a one-way or direct current and reduced the current going to the battery being charged to about six to ten volts. The batteries were kept in the basement just below the charger. There were six wires there: Two connecting the house current with the charger; two connecting the charger with the battery being charged; and two from the battery in use at the time to the radio set in a room above. The wires to or from the batteries appear to have been connected thereto by metal clips so as to be easily put on and removed. At the time he was killed the decedent was engaged in changing batteries. His purpose was to disconnect the one battery from the charger and connect it with the radio set, and disconnect the other battery from the radio set and connect it with the charger. He went into the basement for that purpose and was almost immediately killed by an electric shock from contact with some of the wires, clips, and apparatus mentioned. No one saw what happened. Immediately afterwards he was found lying dead on the basement floor near the apparatus. Two wires were found disconnected from the battery, and two of the metal clips were on the floor. There was a burn on the palm and fingers of one hand. His hands and body were not in contact with any wires, clips, or electric current when found. The theory advanced is that he had taken hold of one of the metal clips of the wires with each hand, and that one of these wires connected with the radio set and through it with a ground wire, and the other wire, through the charger, connected with the electric house wires and carried the excessive current, which was thus permitted to pass through his body. On what may be called an instrument board, next to the battery charger and connected therewith, decedent had placed two ordinary switches, the opening of either one of which would have shut off any ordinary current from the wires leading out of the charger. These switches had been placed there by him for that purpose. He understood their use and purpose and usually opened them or one of them when changing the batteries. When

the accident happened he called to his mother, who was in the kitchen above, to pull the switch. She ran down into the basement but found him then in the condition stated. Neither of the switches had been opened. It is urged that decedent must have understood and appreciated the danger of handling the apparatus without opening either switch and that he was guilty of contributory negligence as a matter of law.

■ We agree with the trial court that the evidence was sufficient to justify the jury in finding that the defendant was negligent in failing properly to ground the wires and in failing to inspect and maintain the transformer in reasonably safe condition, thereby causing an excessive current to be carried into the house, and in finding such negligence a proximate cause of decedent's injury and death.

■ The learned trial court in its memorandum well states many facts going to show contributory negligence. If these were all the facts bearing upon the question and were all conclusively shown by the evidence, contributory negligence might well be held established as a matter of law.

It is not shown that decedent had any notice or knowledge of the fact that the house wires carried an excessive current. There is the presumption that he exercised ordinary care. That presumption however is a rule of proof and has no special application if all the facts and circumstances surrounding the accident are shown and undisputed. In the present case no one saw the accident. How it happened must be gathered, if it can be done, from the circumstances and situation shown. Circumstantial evidence may be, but is not ordinarily, conclusive. Ordinarily such evidence presents a question of fact for the jury or trier of facts. We are dealing with electricity, a silent and unseen force. Neither sight nor hearing could detect it. Whether the ordinary house current of 110 to 120 volts would have caused serious injury is in dispute. There is some evidence tending to show that the ordinary house current would not have so passed through the charger as to cause any injury. It is generally understood, we believe, that a strong,

high-voltage current will flash across spaces or through obstacles, where a lesser current will not pass. We have examined the battery charger, instrument board, switches, clips and wires involved, and have considered the oral testimony, partly that of experts and somewhat of a technical nature. There are phases of electricity which are even at the present time not well known. Experts are sometimes puzzled to know what electricity will do under given circumstances. It has been difficult for us to determine just what happened there. Does it conclusively appear that decedent was negligent in failing to open one or both of the switches? We are unable to so find.

A citation of numerous authorities on negligence rules we deem not necessary or specially helpful. Many of the rules as to contributory negligence are stated in Eichhorn v. Lundin, 172 Minn. 591, 216 N. W. 537. 4 Dunnell, Minn. Dig. (2 ed.) §§ 7012-7035, covers the subject. Plaintiff, appellant here, cites Gilbert v. Duluth G. E. Co. 93 Minn. 99, 100 N. W. 653, 106 A. S. R. 430; Dushaw v. G. N. Ry. Co. 157 Minn. 171, 195 N. W. 893; Grimm v. Omaha E. L. & P. Co. 79 Neb. 387, 112 N. W. 620, and same case in 79 Neb. 395, 114 N. W. 769; and York v. General Utility Corp. 44 N. D. 51, 176 N. W. 352. These cases tend in some degree to sustain plaintiff's contention that contributory negligence was a question of fact for the jury. Differences in the facts prevent either case from being controlling here.

The court, in the memorandum, and defendant, in its brief, cite many cases. The cases of Columbus R. Co. v. Dorsey, 119 Ga. 363, 46 S. E. 635; Cosgrove v. Kennebec L. & H. Co. 98 Me. 473, 57 A. 841; and Hoke v. Edison L. & P. Co. 284 Pa. 112, 130 A. 309, are perhaps nearest in point on the facts. This court however does not apply the rules as to contributory negligence as strictly against a plaintiff as do the courts of a number of other states, and we do not consider these cases controlling here.

The defendant seeks to apply the rule that one who voluntarily subjects himself to a known danger is guilty of contributory negligence, although he does not fully appreciate the precise nature of

the danger or anticipate the seriousness of the injury likely to follow; that it is sufficient if he knows in a general way that serious injury is likely to result. "Our attention has not been called to any case in this state clearly defining or applying this rule. It is not in entire harmony with our line of cases holding that the mere fact that a person subjects himself to some danger is not conclusive evidence of contributory negligence. Kelly v. Southern Minn. Ry. Co. 28 Minn. 98, 9 N. W. 588; McKenzie v. City of Northfield, 30 Minn. 456, 16 N. W. 264; Lyons v. City of Red Wing, 76 Minn. 20, 78 N. W. 868; Taylor v. City of Mankato, 81 Minn. 276, 83 N. W. 1084; Williams v. Minneapolis St. Ry. Co. 88 Minn. 79, 92 N. W. 479; Borchardt v. People's Ice Co. 106 Minn. 134, 118 N. W. 359. We take it that the rule, that one who voluntarily subjects himself to some degree of known danger is guilty of contributory negligence if injury follows, is not unyielding. The duty involved is that of exercising ordinary care. The rule of ordinary care, with all its incidents, is the primary and controlling rule. The other facts and circumstances surrounding the accident must be taken into consideration and may be and often are such as to make it a question of fact. The degree of known danger, the known certainty or probability of serious injury, and other facts and circumstances, must be considered.

■ The question whether the father of the young man, plaintiff here as administrator, was guilty of contributory negligence was decided adversely to defendant by the jury, and its finding on that issue approved by the trial court. We find no cause for disturbing that finding.

■ Defendant makes the claim that the acts of the decedent, or his negligence, were an independent, intervening cause, so that, even if the defendant was negligent, such negligence was not the proximate cause of decedent's injury and death. The claim is not well founded.

We conclude that the question of decedent's contributory negligence was for the jury and properly submitted to them, and their verdict should stand.

Judgment reversed.