## VALERY BEHRENDT v. H. ELMER AHLSTRAND AND ANOTHER, INDIVIDUALLY AND d. b. a. PAYNESVILLE MILK PRODUCTS COMPANY.

118 N. W. (2d) 27.

October 11, 1962—No. 38,535.

*Quinlivan, Quinlivan & Quinlivan,* for appellants.

*Robins, Davis & Lyons, Kenneth E. Tilsen,* and *Lawrence Zelle,* for respondent.

NELSON, JUSTICE.

Action against H. Elmer Ahlstrand and G. T. Ahlstrand, individually and as copartners doing business as Paynesville Milk Products

Company, to recover for injuries sustained by plaintiff, Valery Behrendt, while on defendants' premises as a business invitee.

Since plaintiff was the prevailing party below, we resolve all conflicts in the evidence in his favor in the following statement of facts: On the morning of January 11, 1960, plaintiff, while in the employ of his brother, Clifford Behrendt, picked up milk from various farmers in the vicinity, and delivered it sometime between 9 and 10 o'clock to the creamery owned and operated by defendants at Paynesville, Minnesota. On arrival he drove the truck to the loading area on the south side of the creamery. The loading platform is a concrete slab about 12 to 14 feet wide and 16 to 18 feet long. A drain has been built into the slab about 4 feet from its west end, the slab sloping sufficiently so that water which accumulates on it when the drivers rinse their tanks is carried off by the drain. Small wooden wedges are located on the slab so that a truck may be driven up a ramp and its back thus lowered for draining the tank.

After driving his truck onto the concrete slab and up a ramp, plaintiff opened the back door of the truck, connected the tank with the creamery milk hose, and emptied the tank of milk. He then unhooked the milk hose and rinsed the inside of the tank with a water hose provided by the creamery for that purpose and connected to valves on the outside of the building. It was customary for milk deliverymen to rinse their tanks inside and to some extent outside after completing the milk deliveries. During the rinsing, water splattered over the cement slab and ran down it from the tanks, ultimately being carried away by the drain. On the morning in question the weather had turned extremely cold. There is testimony indicating that some of the water used by plaintiff froze on the slab. The record does not indicate whether any ice had accumulated on the slab prior to plaintiff's milk delivery. There is testimony that there was ice in other areas about the creamery also.

The loading area was not covered or enclosed and remained open to the elements the year around. No heating equipment had been provided to prevent icing and no salt or sand had been provided to give warning or protection against icy conditions in the platform area.

When called by plaintiff as an adverse witness, H. Elmer Ahlstrand, one of the defendants, stated that to use sand would clog the drain. He admitted that he had observed ice on the platform at times, that he had noticed some ice here and there, and that he was aware that rinsing water spilled in the wintertime would form ice on the concrete.

It is clear that some ice and slipperiness results in the slab area during the winter since the business of receiving milk, accompanied by rinsing operations after each tank delivery, is a day-to-day operation every day of the week, regardless of weather conditions.

After plaintiff completed rinsing the tank he backed the truck off the slab and drove forward and parked next to the east end of the slab so that another truck could park on it. As defendant required drivers to procure samples of milk from the farms from which they collected milk, plaintiff next entered the building to obtain sample bottles. He entered it through a door near the west end of the loading area, walking around the truck which had parked on the loading slab and then across an icy area on the slab. He picked up the sample bottles, putting two in his pocket, and carrying three in each hand. Another driver opened the door for him and he started to·return to his truck, but slipped on some ice on the slab about two feet from the drain. The bottles in his left hand were broken and his hand and wrist were severely cut.

Plaintiff testified that upon entering the building he walked slowly and cautiously across the icy patch on the slab to the west of the drain. He wore high, four-buckle rubbers which had corrugated soles to allow for more friction. When called as an adverse witness he admitted that he had observed ice form on the slab when he was rinsing the tank. He admitted that he knew that if he were not careful in walking over this portion of the slab he might slip and fall. He said that he proceeded across it with care for that reason. He testified that he used the entrance customarily used by all drivers. He admitted knowing that the bottles which he carried in his hands and pockets were breakable and that if he should fall, he could be seriously hurt. While plaintiff could have taken a drawer from his truck for carrying the milk-sample bottles, he would have had to remove butterfat-sample

bottles from the drawer and replace them later. No other container was furnished either by defendants or by plaintiff's employer for handling the milk-sample bottles. The drivers generally carried these bottles loose in the front seats of their trucks, and plaintiff testified that he had never seen drivers remove butterfat-sample bottles in order to use a drawer for carrying milk-sample bottles.

Defendants moved for judgment notwithstanding the verdict or in the alternative for a new trial upon the grounds that the verdict is not justified by the evidence and is contrary to law and that the trial court erred in denying their motions for a directed verdict at the close of plaintiff's case and at the close of the evidence. They appeal from the order denying their motion.

The amount of the verdict is not in dispute. Defendants contend, however, that even if under the evidence the jury could find that they had failed to maintain the premises in a safe condition, plaintiff was guilty of assumption of risk and contributory negligence as a matter of law. The crux of their theory is that plaintiff knew of the icy condition, which they contend was obvious to him, and was therefore contributorily negligent as a matter of law in using the same route upon leaving the building that he had used in entering it and that he assumed the risk of injury because he knew of an alternative route that he might have taken to avoid the icy condition near the entrance he had used.

1. The occupier of land is required to exercise reasonable care to warn a business invitee of dangers which the occupier knows exist or which he could discover with reasonable care. Those obligations on the part of the occupier exist only while the visitor is upon the part of the premises to which his invitation extends—the part which the occupier has made available to the visitor for the purposes which have made him a business invitee. Dean Prosser has described the area of invitation in the following language (Prosser, Torts [2 ed.] § 78, p. 458):

"The special obligation toward invitees exists only while the visitor is upon the part of the premises which the occupier has thrown open to him for the purpose which makes him an invitee. This 'area of invita-

tion' will of course vary with the circumstances of the case. It extends to the entrance to the property, and to a safe exit after the purpose is concluded; and it extends to all parts of the premises to which the purpose may reasonably be expected to take him, and to those which are so arranged as to lead him reasonably to think that they are open to him."

As to the care required this author has said (p. 459):

"The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. He must not only warn the visitor of dangers of which he knows, but must also inspect the premises to discover possible defects."

In 2 Harper & James, Law of Torts, § 27.12, p. 1487, the occupier's duty to the business invitee is stated as follows:

"* * * If plaintiff is an invitee at the time and place of his injury, the occupier, of course, owes him all the duties he owes to trespassers and licensees. Thus the occupier must use care not to injure plaintiff by negligent activity, and also to warn him of latent perils actually known to the occupier. In addition, the occupier owes the duty of care to inspect his premises and to discover dangerous conditions. This is the most prominent difference between the rights of invitees and those of licensees, and its prominence has sometimes obscured the fact that the invitor's duty of reasonable inspection is only part of a larger duty of reasonable care to make the premises reasonably safe."

2. The business visitor is entitled to assume that proper care has been exercised to make the premises safe and is not required to be on the alert for unusual conditions.[1] Plaintiff as a business invitee in the instant case had a right to expect reasonable safety and convenience in the area made available to him as such. He was not required to use extraordinary caution, but only such care as persons of reasonable prudence ordinarily exercise under such circumstances.

---

[1]See, Holmes v. Ginter Restaurant Co. (1 Cir.) 54 F. (2d) 876; Glenn v. W. T. Grant Co. 129 Neb. 173, 260 N. W. 811; Smith v. S. S. Kresge Co. 116 Conn. 706, 164 A. 206.

3.   In Fitch v. City of Blue Earth, 180 Minn. 125, 130, 230 N. W. 469, 471, Mr. Commissioner Olsen said:

"The defendant seeks to apply the rule that one who voluntarily subjects himself to a known danger is guilty of contributory negligence, although he does not fully appreciate the precise nature of the danger or anticipate the seriousness of the injury likely to follow; that it is sufficient if he knows in a general way that serious injury is likely to result. Our attention has not been called to any case in this state clearly defining or applying this rule. It is not in entire harmony with our line of cases holding that the mere fact that a person subjects himself to some danger is not conclusive evidence of contributory negligence. Kelly v. Southern Minn. Ry. Co. 28 Minn. 98, 9 N. W. 588; McKenzie v. City of Northfield, 30 Minn. 456, 16 N. W. 264; Lyons v. City of Red Wing, 76 Minn. 20, 78 N. W. 868; Taylor v. City of Mankato, 81 Minn. 276, 83 N. W. 1084; Williams v. Minneapolis St. Ry. Co. 88 Minn. 79, 92 N. W. 479; Borchardt v. People's Ice Co. 106 Minn. 134, 118 N. W. 359. We take it that the rule, that one who voluntarily subjects himself to some degree of known danger is guilty of contributory negligence if injury follows, is not unyielding. The duty involved is that of exercising ordinary care. The rule of ordinary care, with all its incidents, is the primary and controlling rule. The other facts and circumstances surrounding the accident must be taken into consideration and may be and often are such as to make it a question of fact. The degree of known danger, the known certainty or probability of serious injury, and other facts and circumstances, must be considered."

In Borchardt v. People's Ice Co. 106 Minn. 134, 137, 118 N. W. 359, 360, in which plaintiff was injured while unloading ice from a railroad car which had a hole in its floor, this court held:

"* * * It was not negligence per se for appellant to attempt to remove the ice, knowing the hole was there, and the fact that he voluntarily took some risk is not conclusive evidence that he was not, under the circumstances, using due care. It does not conclusively appear that the risk was so imminent that a person of ordinary prudence would

refuse to carry on the work. The question before the court was whether appellant was in the exercise of ordinary care in doing his work under the circumstances. This, we think, under the evidence, was a question of fact, and should have been submitted to the jury."

While one of defendants was called for cross-examination under the rules by plaintiff's counsel, he was not questioned by his own counsel. Defendants offered no testimony other than what they elicited from plaintiff on cross-examination under the rules. Their purpose in calling him to the stand is demonstrated by the following questions and answers:

"Q. So I take it, Mr. Behrendt, that at the time you started to cross that platform you knew you were carrying breakable bottles and would have to walk across that slippery ice, is that right?

"A. Yes. I was careful.

"Q. And you knew because of the ice, and because of the breakable bottles you were carrying, and the slippery condition of the ice, that it was dangerous to do that, didn't you?

"A. Yes. All the rest of them did.

"Q. You knew it was dangerous?

"A. Yes.

"Q. And yet you chose to leave the building and go across the platform in the manner you did, is that right?

"A. Yes. It was slippery all over.

"Q. All over, coming out of that particular door?

"A. Yes.

"Q. And at that time even though you knew that there was at least another door available you could have used and avoided the accident?

"A. Yes, if I opened up all the doors and everything."

It is apparent that defendants were attempting to establish that when plaintiff left the building he could have used another door and taken a safer route in returning to his truck and was therefore contributorily negligent. It is reasonable to assume that had plaintiff taken an alternative route, as suggested by questions of counsel, he would have

been reduced to the status of a licensee and if he had then been injured defendants might well have claimed that he was no longer entitled to the protection accorded a business invitee on the grounds that he was using an area which had not been thrown open to him for the purposes which gave him that status.

4. In Larson v. Red River Transp. Co. 111 Minn. 427, 127 N. W. 185, this court held that one who builds an approach to premises where the public is invited to enter is bound to use reasonable care to maintain the same at a reasonably safe height and further determined that one who invites others to deal with him and provides a place where persons may deliver articles is bound to use such reasonable care to make and keep the approach to such place reasonably safe.

In Dore v. Swift & Co. 175 Minn. 545, 221 N. W. 904, plaintiff went to the premises in search of employment at 7 o'clock in the morning. The defendant maintained an employment office upon its grounds and the guard directed her to it. Apparently realizing plaintiff's purpose, he told her "they hiring women folks this morning" and showed her the way to go. Under these circumstances this court sustained a finding that she was an invitee of defendant and affirmed a verdict she recovered for injuries she received from falling on ice on the premises. The court held that while the evidence of want of care in providing a safe way to the employment office was slight, nevertheless the evidentiary facts in dispute were for the jury. We also said (175 Minn. 546, 221 N. W. 905):

"* * * That it is the duty of the owner of premises to exercise ordinary care in keeping them reasonably safe for those invited to use them is not questioned. [Authorities cited.] The walk was icy. There was sleet the night before, and perhaps some snow. The pavement was of brick. The guard says it 'looked kind of glassy,' that the 'sleet storm formed a thin coat of glaze or sleety ice,' and that he said to the plaintiff, 'Be kind of careful, it may be a little slippery here this morning.' Many traveled the same route. The defendant knew that the way was to be used by pedestrians in the condition it was. That was the kind of way it furnished."

5. In Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395, in upholding a verdict recovered by one of the plaintiffs for injuries sustained in a fall on a roadway in defendant's used-car lot and one by her husband for consequential damages, this court held that the standard of care owed to business invitees remains the same whether a business is conducted indoors or outdoors and what constitutes ordinary care for the safety of customers in a given case is a jury question where reasonable men may differ as to what constitutes ordinary care. In the course of the opinion Mr. Chief Justice Loring speaking for the court said (232 Minn. 244, 45 N. W. [2d] 398):

"* * * Certainly, the alleged impracticability of keeping defendant's premises safe does not loom so large when the place where the injury occurred was a driveway that could have been cleared of ice and snow or, at least, sanded. We think that a finding of negligence on defendant's part is amply sustained by the evidence showing failure to maintain a safe pedestrian entrance to his place of business. * * * On these facts, we have the situation of customers examining merchandise in a place of business, and the question squarely presented is whether we should hold that an operator of an outdoor business has exercised reasonable care for the safety of his customers although he has done less in that direction than would be required if he were conducting his business in a closed building."

The court held that the issue of defendant's negligence was properly submitted to the jury.

Defendants in the instant case failed to present any evidence to show what care they had exercised, if any, to keep the premises in a safe condition or what safer approaches or exits had been made available to plaintiff as a business invitee.

6. In Strong v. Shefveland, 249 Minn. 59, 81 N. W. (2d) 247, we held that the plaintiff, who had been injured in a fall on ice on defendant's premises, was not charged with the burden of establishing the impracticability or impossibility of using other streets or sidewalks; the burden of proving the favorability of a safer route of travel was on the challenger. See, Campion v. City of Rochester, 202 Minn.

136, 277 N. W. 422; Slindee v. City of St. Paul, 219 Minn. 428, 18 N. W. (2d) 128.

Under the circumstances disclosed by the record in the instant case we are unable to conclude that plaintiff was guilty of contributory negligence as a matter of law. While knowledge of exposure to danger is a factor bearing upon the issue of contributory negligence, it is not necessarily sufficient of itself to establish contributory negligence as a matter of law without regard to surrounding circumstances. Zuercher v. Northern Jobbing Co. 243 Minn. 166, 66 N. W. 892. Negligence must be predicated on what should be reasonably anticipated and not merely on what happened.

Taking the view of the evidence most favorable to the verdict, a motion for judgment notwithstanding the verdict, whether based on negligence or contributory negligence, should be denied unless the evidence in support of the verdict, and all reasonable inferences to be drawn therefrom, be so wholly incredible and unworthy of belief or so conclusively overcome by other uncontradicted evidence that the want of negligence or the presence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable men. Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213. This rule has been repeatedly stated by this court. The record in this case amply supports the denial by the trial court of defendants' motion for judgment notwithstanding the verdict or in the alternative for a new trial.

Affirmed.