## KATHERINE A. SARSFIELD v. ST. MARY'S HOSPITAL.

129 N. W. (2d) 306.

June 19, 1964—No. 38,877.

*Mahoney & Mahoney,* for appellant.
*Lasley & Foster,* for respondent.

FRANK T. GALLAGHER, C.

This is an action for personal injuries arising out of a fall by plaintiff as she left defendant's hospital after visiting a patient. The jury returned a verdict for plaintiff, and the court denied defendant's alternative motion for judgment n. o. v. or a new trial. Defendant appeals from the judgment thereafter entered.

The four questions presented are (1) whether the evidence showed that defendant was free of negligence as a matter of law; (2) whether plaintiff assumed the risk of injury or was contributorily negligent as a matter of law; (3) whether her status as a visitor on defendant's premises was that of a licensee as a matter of law at the time of her injury; and (4) whether there was error in the instructions to the jury with respect to plaintiff's status.

The defendant is an incorporated hospital located in Minneapolis. Plaintiff and her sister arrived at the hospital at about 3:30 p. m. on December 17, 1957, to visit an ill friend. When they arrived at the hospital, it had been sleeting and snowing for about 30 minutes and the sidewalks were wet and slushy. Due to a construction program at the hospital, a temporary main entrance had been constructed with a covered walkway on which an abrasive material had been placed. Plaintiff and her sister used that entrance when they entered the hospital. They remained with their friend for about 15 or 20 minutes and then started toward the main entrance by which they had entered. As they went down the hallway from their friend's room, they saw another doorway that had a red, lighted "Exit" sign above it. Determining that this would be a more convenient way to leave the hospital, they opened the door and went down a stairwell to a second door that led to the outside. The second door also had a red, lighted "Exit" sign above it. They went through that door and walked down the three outside steps to a plywood ramp. This also was a temporary walkway leading from what was apparently intended to serve as a fire exit to the public sidewalk. It was constructed of plywood sheets laid upon the ground and was relatively level up to a point about 3 to 5 feet from the public sidewalk. At that point, the walkway dropped about 1½ to 2 feet, although there was testimony from which the jury could have found that the drop was from 3 to 4 feet.

When plaintiff and her sister left the hospital, it was still snowing and sleeting, and as they stepped onto the plywood walkway, they realized it was very slippery. They stepped onto the grass and walked alongside the ramp until they were required to go back onto it because of a hedge that ran directly up to the ramp on both sides where the slope commenced. Plaintiff's sister stepped back onto the ramp and walked the remaining distance to the public sidewalk without incident. Plaintiff then stepped onto the walkway and fell on the slope, sustaining injury to her back and wrist.[1]

---

[1] In its charge to the jury, the court explicitly stated that defendant's negligence, if any, arose from the manner of construction and maintenance of the walkway in view of the slope allegedly commencing about 3 to 5 feet

■ Defendant contends that no actionable negligence on its part was shown and that therefore the court should have directed a verdict in its favor or granted its motion for judgment n. o. v. Unless the evidence was clear as a matter of law that there was no negligence involved in defendant's construction or maintenance of the walkway, the trial court properly submitted the issue to the jury.[2]

A landowner or possessor of premises is required to maintain them in a reasonably safe condition for the use of business invitees. The landowner or occupier also has a duty to make reasonable inspections of the premises and to warn of dangerous conditions of which he knows or should know and which an invitee is not reasonably likely to notice.[3]

The evidence shows that the walkway on which plaintiff fell was constructed of plywood; that the grain ran with the direction of the walkway; that it generally was sloping; that there were no handrails; that the walkway was constructed without any kind of abrasive material thereon; and that none was placed on it when it became slippery during the storm. In addition, there was evidence to the effect that there was a steep slope in the last 5 feet of the ramp. In view of this evidence, the jury reasonably could have concluded that due to the manner of the construction of the walkway the hospital was negligent in failing to employ reasonable measures to protect the hospital's invitees from injury when it became slippery. We are of the opinion

from the public sidewalk. The court admonished the jury that the defendant was not negligent merely because it failed to clear the ramp of the slush or in some other way reduce its slipperiness during the storm. In accord with Mattson v. St. Luke's Hospital, 252 Minn. 230, 89 N. W. (2d) 743, 71 A. L. R. (2d) 422, the court properly instructed the jury that only when there are extraordinary circumstances that render the walkway unreasonably dangerous to invitees is a landowner or possessor required to take measures to reduce the slipperiness of his walkways prior to a reasonable time following the cessation of a storm. See, also, Walker v. The Memorial Hospital, 187 Va. 5, 45 S. E. (2d) 898.

[2]See, Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213.

[3]Behrendt v. Ahlstrand, 264 Minn. 10, 118 N. W. (2d) 27; Larson v. Red River Transp. Co. 111 Minn. 427, 127 N. W. 185; Dore v. Swift & Co. 175 Minn. 545, 221 N. W. 904.

that there was sufficient evidence to support the jury's finding of negligence in the construction and maintenance of this walkway.

■ Defendant concedes that when plaintiff entered upon defendant's premises she was a business invitee,[4] but it argues that when plaintiff left by the fire exit she was using a part of the premises to which she was not invited, since that exit was not a usual and customary way for leaving the hospital premises, and thus she became a licensee as a matter of law.

It is well settled by our decisions that a landowner or possessor has a duty to use reasonable care toward an invitee only when he enters and leaves the premises by the usual and customary way and is in that part of the premises to which he was invited or reasonably thought he was invited. Behrendt v. Ahlstrand, 264 Minn. 10, 118 N. W. (2d) 27; Schmidt v. George H. Hurd Realty Co. 170 Minn. 322, 212 N. W. 903. If the exit by which plaintiff chose to leave the premises in the instant case was an unusual one, or one that she could not have reasonably thought she was invited to use, she was no longer an invitee. The general rule is that a mere licensee must take the premises as he finds them, although this does not absolve a negligent defendant from liability where his active or affirmative acts of negligence are the cause of plaintiff's injuries.[5]

It appears from the record herein that the exit plaintiff used was along a commonly traveled, main hallway, that the door was not locked from the inside, and that it was merely posted as an exit, with no notice that it was intended for use only as an emergency exit. Moreover, there was evidence that defendant did not always keep the door locked from the outside. Plaintiff and her sister testified that after plaintiff's fall they saw other persons leaving the hospital by the exit in question. From this evidence, the jury might have found that it was neither uncommon nor unusual for persons in the hospital to use the exit in question. Furthermore, since the door was not marked as a restricted exit, a finding that defendant invited plaintiff to use this exit would not have been unreasonable. It is therefore our opinion that the

---

[4]See, Mattson v. St. Luke's Hospital, 252 Minn. 230, 89 N. W. (2d) 743.
[5]Roadman v. C. E. Johnson Motor Sales, 210 Minn. 59, 297 N. W. 166.

evidence was sufficient to permit the jury to decide that plaintiff did not become a licensee when she left by this exit.

■ The defense of assumption of risk requires proof that the plaintiff fully appreciated the risk and voluntarily chose to assume it when there were other and safer alternatives. Hansen v. City of Minneapolis, 261 Minn. 568, 113 N. W. (2d) 508.

Although the jury might reasonably have found that plaintiff had assumed the risk in this case, there appears to be a basis for its conclusion that she had not. The evidence supports a finding that plaintiff may have lacked full knowledge of the extent of the slope in the last 5 feet of the walkway, and of its slippery condition, until she was upon it, inasmuch as her sister had preceded her without harm. It appears to us that this question under the circumstances was one for the jury and that the evidence supports its conclusion that plaintiff did not assume the risk.

The record here does not indicate that because plaintiff failed to appreciate the risk she was contributorily negligent as a matter of law. In view of the sharp decline in the last part of the ramp and its condition, we are of the opinion that under the facts and circumstances herein the issue of her contributory negligence was properly submitted to the jury.

■ Finally, defendant asserts that the court erred in failing to properly instruct the jury in regard to plaintiff's status if she exceeded the limits of her invitation on defendant's premises and also as to the extent of defendant's duty to her if she did go beyond her invitation. We have examined the court's charge and believe that it fairly and adequately informed the jury of the law on both of these issues.

Affirmed.