GERTRUDE LYON v. DR. SCHOLL'S FOOT COMFORT SHOPS, INC., AND ANOTHER.

87 N. W. (2d) 651.

January 17, 1958—No. 37,145.

*Mahoney & Mahoney,* for appellant.
*Bauers, Pratt, Cragg & Barnett,* for respondent.

NELSON, JUSTICE.

Suit by Gertrude Lyon against Dr. Scholl's Foot Comfort Shops, Inc., a corporation, and Dr. F. F. Martin to recover damages for injuries sustained by plaintiff when she slipped and fell on one of the floors in defendants' store. At the close of plaintiff's testimony, the court granted a motion for a directed verdict in favor of Dr. Martin on the ground that there was no evidence that he had any control over the premises and on the ground that he was not guilty of any

actionable negligence. The jury returned a verdict of $7,500 for plaintiff against the other defendant, and it appeals from the order of the trial court denying its motion for judgment notwithstanding the verdict or in the alternative for a new trial.

Resolving as we must all conflicts in favor of the prevailing party below, the facts appear to be as follows: Plaintiff went to the premises of the defendant at 930 Nicollet Avenue South, Minneapolis, Minnesota, in the early afternoon of April 8, 1954. She did so pursuant to an appointment which she had made for chiropody service. The defendant operates two floors. The chiropody department is located on the lower floor of the premises. Upon her arrival plaintiff took a seat in the waiting room downstairs until her name was called, when she walked toward the booth to which she had been directed. The floor was an asphalt tile floor. After taking eight or ten steps toward the booth, her right foot suddenly shot out from under her causing her to fall. She had been walking straight ahead, at an ordinary gait. As she fell to the floor her left leg crumpled or doubled up under her and she felt a pain in her left knee. The fall left her in a sitting position without her back striking the floor. An ambulance was called and she was later taken to Asbury Hospital where it was discovered that her left leg had been fractured. She remained in the hospital 66 days.

Plaintiff's witness testified that the wax on the floor was soft and slippery. The slipperiness was not due to water on the surface of the floor. The parties do not dispute that fact. Plaintiff claims that the slipperiness was due to failure on the part of the defendant to exercise reasonable care in the maintenance of its asphalt tile floor. At least two of plaintiff's witnesses, who were familiar with, as well as experienced in, the care of similar floors, testified that it was shiny, highly polished, and that it had the appearance of a waxed floor. Plaintiff wore a pair of black suede shoes, which were practically new, with leather heels and soles. She had worn them only on two previous occasions. Due to the fall her right shoe came in contact with the floor on the right side. As a result she discovered a film on the suede part of her shoe. There was no such film on her shoes when she took her seat in the waiting room nor prior to the time she fell. This

film consisted of a wax substance commonly found in floor waxes which are used in the waxing of asphalt tile floors. Plaintiff claims that the floor was soft and slippery at the point where she fell because of improper care and maintenance of the floor and that the adherence of film to the suede of her shoe was additional proof of that fact. Plaintiff further claims that had the floor been properly maintained and cared for it would not have been slippery and soft beneath what appeared to be a dry surface. She contended and the jury found that the injuries and damages she sustained were the result of defendant's failure to exercise reasonable care in the maintenance of its asphalt tile floor which she was invited to use as patron and business invitee of defendant.

The two witnesses who testified in behalf of plaintiff as to the waxed appearance of defendant's floor were Susie Abramovitch and Georgia Wick. Susie Abramovitch had been on the premises several times, and Georgia Wick was present at the time that the plaintiff fell. There was testimony to the effect that at times the floor appeared shiny and highly polished and that in some instances more dull in appearance. Susie Abramovitch had suffered a fall on the same floor due to a similar condition on March 20, 1954, some 19 days earlier. There was testimony that the floor was kept and maintained in the same condition at the time she fell; that the floor was slippery causing her to fall; and that a film-like substance adhered to her shoes at the time due to a contact with the floor surface. She testified that the film was similar to that which adhered to plaintiff's shoe and that one of the attendants present took her shoes to the upper floor where the film was removed. Mr. O. T. Carlson, the manager, a witness for the defendant, admitted that the floor was identical and in the same condition on the dates of March 20, 1954, and April 8, 1954.

Plaintiff introduced into evidence her right shoe which had a film or streak of wax-like substance on the suede part. Plaintiff called Mr. Jose B. Calva, a chemical engineer, as an expert witness. He testified to having examined plaintiff's right shoe, which was received in evidence, for the purpose of making an analysis of the material which had adhered to the shoe after the fall. Mr. Calva removed part of the material and examined it chemically. This chemical analysis in-

dicated that the wax-like substance on plaintiff's shoe constituted a film of floor-waxing compounds. Mr. Calva stated that this film constitutes an emulsified wax and that the wax particles are maintained in suspension by means of a suitable emulsifying substance of soaps and water. He testified that as the water evaporates the film of wax remains and that, when the film becomes completely dry, that is, when all the solvents have been evaporated, it becomes hard and is not slippery. He testified that the slippery condition of the floor film does not depend upon the presence of water or visible moisture on the surface of the waxed floor but rather upon the amount of moisture within the wax compound which is permitted to remain beneath the wax film. Such a surface will appear dry, but if the water content remains too high, the film will be soft and its surface slippery. The elements that make up asphalt tile flooring will not absorb moisture.

While the defendant's witnesses denied that any wax had ever been used upon this asphalt tile floor, their testimony did establish as an undisputed fact that the floor had received an application of hot water every morning except Sundays by the use of a mop. Mr. Calva's testimony further indicated that the daily application of hot water in maintaining the floor in question would, if wax was present, cause the binding compound of the film, under the surface next to the tile, to remain emulsified, soft, and slippery for longer periods and in a form that could be transferred where there is contact with another surface. If time is given for the solvents or water to go out of it and the wax is permitted to become sufficiently dry and hard, it will only chip or scratch, or become dusty, but it will not then transfer as a film to another surface. It could well be inferred from Mr. Calva's testimony that the emulsified soapy layer which forms between the asphalt tile and the surface of the wax had not been properly reduced in moisture content. Mr. Calva's expert testimony was supported by the testimony of plaintiff and her other witnesses, one of whom had experienced a similar incident on the same floor. She said that the asphalt tile floor in question had the appearance of a floor that had been treated by the application of wax, and Georgia Wick stated that "it was sort of a—some kind of a tile floor, similar to this floor here," referring to the waxed and highly polished courtroom floor where the case was tried.

■ Defendant strenuously maintains that there was no evidence of negligence on defendant's part in the maintenance of the floor. The law in this state relative to the care to be exercised by shopkeepers is that the shopkeeper is not an insurer of the safety of his premises, but that he is obligated to exercise reasonable care to keep his shop in a safe condition for his customers or patrons and others whom he invites expressly or impliedly to enter upon his premises. He can only be held liable for injuries resulting from his negligence or that of his agents and employees acting in the scope of their employment. See, 13 Dunnell, Dig. (3 ed.) §§ 6984, 6987. In this connection, see, also, Anderson v. Sears, Roebuck & Co. 223 Minn. 1, 26 N. W. (2d) 355; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213; Bragg v. The Dayton Co. 212 Minn. 491, 4 N. W. (2d) 320.

■ An owner of a shop or store does not incur liability from the mere fact that one falls and is injured in his place of business. Damages can only be recovered if the keeper of the shop or store had been negligent and such negligence must be predicated on what one should have anticipated and not merely on what happened. The shopkeeper, however, is charged with the duty to keep and maintain his premises including the floors in a reasonably safe condition, and if he does that, he is not liable, even though an injury occurs; but if he is negligent in the care and maintenance thereof, then the one injured on account of such negligence may become entitled to recover damages resulting from such injury. This rule was made clear in Dunham v. Hubert W. White, Inc. 203 Minn. 82, 279 N. W. 839. Defendant places great reliance upon this case and urges it as its main authority for obtaining a reversal in the case at bar. The plaintiff, however, in the Dunham case did not claim that there was any unworkmanlike or improper application of the wax, nor was any claim made other than that the floor as laid and maintained was essentially slippery in its ordinary and usual condition. No claim was made of negligent application of floor material. Recovery was sought on the sole theory that the defendant was negligent in choosing floor material that was in its nature slippery. For that reason the trial court at the close of the evidence in that case directed a verdict for the defendant. The lower court was sustained, this court applying the rule that an owner

in treating a floor may use wax or oil or other substance in the customary manner without incurring liability to one who slips and falls thereon, *unless the owner is negligent in the materials he uses or in the manner of applying them.* It was made clear, however, in the Dunham case that the general rule applicable is that *one who keeps a shop or store is bound to exercise reasonable care to keep it in a safe condition for his customers.* The situation involved and the facts upon which the plaintiff based her claim in the Dunham case are clearly distinguishable from the situation which the record presents in the case at bar.

Plaintiff relies upon O'Connor v. J. C. Penney Co. 211 Minn. 602, 604, 2 N. W. (2d) 419, 420, as controlling in the instant case and urges consideration of the following language from that opinion:

"* * * The testimony introduced on behalf of defendant showed that Myco Sheen when properly applied gives the floor a gritty feeling and does not make it slippery. In view of that testimony, is not evidence that the floor was actually slippery ground for an inference that defendant improperly or negligently applied it? We think so."

The court in the O'Connor case went on to say, in referring to the insufficiency of the proof of negligence in the Dunham case, that (211 Minn. 604, 2 N. W. [2d] 420):

"* * * In the absence of additional factors from which an improper application or maintenance may be inferred, the benefits attendant upon the use of a standard floor product normally outweigh the inevitable risk to the public. To hold otherwise would practically make the store or shopkeeper an insurer. But, as indicated, the rule of the Dunham case was not intended for unqualified application. 'A standard which requires only conduct proportionate to the circumstances and the risk seldom, if ever, can be made a matter of absolute rule.' Prosser, Torts, p. 287 [now (2 ed.) § 40, p. 197]. At any rate, since no point was made of improper application of the wax, this court in the Dunham case was passing upon a different question than is before us now."

Attention was directed in the O'Connor case to McIntyre v. Holtman, 193 Minn. 439, 258 N. W. 832, where an inference of improper

application of oil to defendant's floor was drawn from the fact that there was a film of oil at the place where plaintiff fell, the floor there being less worn, and comparison was also directed to the holdings in Driscoll v. Bob Wallace Merc. Co. 197 Minn. 313, 266 N. W. 879; Taylor v. Northern States Power Co. 196 Minn. 22, 264 N. W. 139; Phelps v. Montgomery Ward & Co. 231 Mo. App. 595, 107 S. W. (2d) 939. Plaintiff in the O'Connor case claimed that defendant was negligent in the manner or means of applying Myco Sheen in the maintenance of its floors, creating a slipperiness which the jury found to be a dangerous condition and proof of violation of the duty of the owner to exercise due care for the safety and protection of his customers. The jury returned a verdict for the plaintiff in that case, but upon motion by defendant, the trial court granted judgment notwithstanding the verdict. This court held that the trial court was in error and ordered plaintiff's verdict reinstated.

The defendant here called as a witness its janitor, Arthur Bartos, who had been employed in that capacity by the company for two years when he retired on January 15, 1955. He did not know whether the floors had been waxed before he took over. He denied the use of wax. He also stated that he never used anything to buff or polish the floors and denied that they had a shiny appearance. He testified that he used hot water daily in mopping the floors and that he used Ivory flakes in the water when the floors got bad and at other times some detergent, but the latter very seldom.

Defendant's manager, Carlson, and Bartos, the janitor, admit the ability of persons familiar with waxed floors to be able to tell from the appearance of a floor whether or not it has been waxed, although they denied that the floor in question had been waxed. It was also admitted in effect that if the floor had been properly treated it would not be slippery and that if it was soft and slippery after the daily care given to it there would be something wrong with the way it was maintained. We think the jury could, from the evidence as a whole, though circumstantial in part, draw the inference that wax had been used on the floor and that a soft and slippery condition did in fact exist, which condition was the result of negligent maintenance of the floor and the proximate cause of plaintiff's fall and resulting injury. The trial court in its memorandum made a part of the order

denying defendant's motion for judgment notwithstanding the verdict or a new trial expressed its views with regard to the approval of the jury's findings as follows:

"The jury unquestionably found that there was wax on the floor in question; that it was treated with hot water approximately four or five hours before the accident in question, and that although the floor appeared to be dry to touch and to vision, that none-the-less the drying out process had not been completed and that the wax was soft and slippery; that plaintiff slipped on the floor in question by reason thereof and in doing so the shoe came in contact with the floor and by friction a wax spot was caused to adhere onto the suede of the shoe; that defendant's method in the treatment of the floor through the use of hot water at the times when it was used, constituted negligence, and therefore found the defendant liable."

The testimony of Mr. Calva went completely uncontradicted. It would only be fair to assume that the defendant was in a position to call an expert witness to contradict the testimony of Mr. Calva, but this was not done. The record indicates that the defendant was willing to submit the issues to the jury on testimony largely negative in character.

■ Defendant argues that the trial court erred in allowing Mr. Calva to answer the hypothetical question put to him, and which is set forth in its assignments of error. It is charged that Mr. Calva's opinion was without evidentiary foundation because of lack of any evidence that there was either wax or water on the floor where plaintiff fell. Defendant says that Mr. Calva was required to assume: (1) That there was a film of wax on the floor; (2) that the floor had been washed with water; (3) that the excess water had been mopped up; and (4) that plaintiff slipped and fell on the floor. Defendant contends that the opinion was faulty for the reason that there was no evidence at all that there was wax or water on the floor; that Mr. Calva was by the question only required to assume one of two facts requisite to creating a dangerous condition, that is, that the floor had been waxed without assuming also that water, much less an excess thereof, was permitted to remain on top of the wax. Defendant cites numerous cases in support of its contention stressing Smith v. Twin City Motor

Bus Co. 228 Minn. 14, 36 N. W. (2d) 22; Peterson v. Chicago, M. & St. P. Ry. Co. 38 Minn. 511, 39 N. W. 485; 7 Dunnell, Dig. (3 ed.) § 3337, and other texts. We take no issue with the authorities cited.

The rule is well established that, in propounding a hypothetical question to an expert, a party may assume as proved all the facts which the evidence tends to prove, and the court should not reject the question on the ground that in his opinion such facts are not established by a preponderance of the evidence. It is also the rule that a failure to properly formulate the hypothetical question which justifies rejection must be a failure in some one or more important data, not merely in a trifling respect. The form and the scope of the question should properly be left to the discretion of the trial court. 2 Wigmore, Evidence (3 ed.) §§ 680, 681.

The question which concerns us here is whether facts were assumed which the evidence did not fairly tend to prove. The hypothetical question is generally sufficient when a party assumes facts which the evidence fairly tends to prove. If the trial court permits the hypothetical question to be put by referring the witness to the testimony instead of stating the facts, then of course the question must require the witness to assume the testimony to be true.[1]

Defendant objected to the hypothetical question on the ground that it assumed facts not in evidence. There was testimony on the part of plaintiff's witnesses that the floor was shiny and highly polished and had the appearance of a waxed floor; that one of plaintiff's witnesses had slipped and fallen on the same floor in the month of March preceding; and that both had acquired film spots on their shoes as the result of contact with the floor, the floor being in the same condition on each occasion. Plaintiff's testimony that the film upon analysis contained wax is undisputed. The record discloses no testimony that there was water on the floor at the time of either occurrence. The basis of the plaintiff's claim is that the fall causing her injury was due to improper and negligent maintenance of defendant's asphalt tile floor.

The plaintiff terminated its hypothetical question by asking Mr.

[1]See, 7 Dunnell, Dig. (3 ed.) §§ 3337, 3338, and cases cited; Quinn v. Higgins, 63 Wis. 664, 24 N. W. 482.

Calva "do you have an opinion as to the consistency of the wax at the time of this fall?" The witness answered: "It was soft, slippery, and could be transferred by contact with another surface." Prior to the time that the plaintiff formulated the hypothetical question and asked for this opinion, Mr. Calva had testified that the film found on plaintiff's shoe was the result of contact with wax of the type used in floor compounds, testimony which was never contradicted in the record. Considering Mr. Calva's previous testimony and there being no testimony that water was present on the surface of the floor, the hypothetical question appears to have been unnecessary. We reach the conclusion that the testimony of plaintiff and her witnesses Susie Abramovitch and Georgia Wick, when considered together with the expert testimony of Mr. Calva, the chemical engineer, which became a part of the record before the hypothetical question was propounded, provided the necessary foundation for the hypothetical question asked and that the defendant was in no respect prejudiced by it. See, Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. (2d) 30.

■ Defendant contends that the trial court erred in admitting the evidence of Susie Abramovitch relative to having slipped and fallen on the same floor. Defendant advances the argument that evidence of other accidents is not admissible to show a place is dangerous where there is no proof of a dangerous condition, citing Robitaille v. Netoco Community Theatre, 305 Mass. 265, 25 N. E. (2d) 749, 128 A. L. R. 592. The Robitaille case is clearly distinguishable. There a reversal was directed because it was not shown that the conditions at the time of each fall were substantially the same. In the instant case, the testimony is undisputed that the floor was in the same condition on both occasions. The substance of our holdings in this state dealing with this phase of the law is stated in 13 Dunnell, Dig. (3 ed.) § 7053, in this language:

"Evidence of similar accidents from the same inanimate cause is admissible to prove that the common cause was dangerous or likely to cause such accidents; that the person responsible for it was aware of its dangerous character or tendency to cause such accidents; and that it caused the accident in question. In an action for personal injuries received in a fall evidence that another person had had a similar fall

was unimportant where it had no bearing upon any real issue in the case. It must appear that the conditions at the time of the other accidents were substantially the same as at the time of the accident in question. Conversely, evidence that other similar accidents have never resulted from the alleged cause is admissible."

In the same connection, see Henderson v. Bjork Monument Co. 222 Minn. 241, 24 N. W. (2d) 42; Taylor v. Northern States Power Co. *supra*; Clapp v. Minneapolis & St. L. Ry. Co. 36 Minn. 6, 29 N. W. 340.

■ Another contention of defendant is that the trial court erred in refusing to submit the issues of plaintiff's contributory negligence and assumption of the risk to the jury. A search of the record fails to disclose any improper conduct on the part of the plaintiff in going from her seat in the waiting room to the booth to which she was directed. The floor in question presented no appearance of danger on the surface except that it was shiny and highly polished. The burden of proof was upon the defendant to establish the alleged contributory negligence of the plaintiff as well as the defense that plaintiff assumed the risk. We discern nothing in the record of this case entitling defendant to a submission of the issues of contributory negligence or assumption of risk to the jury and conclude that the trial court properly instructed the jury on the issues of contributory negligence and assumption of risk.

■ The trial court by its instructions strictly limited the evidence from which the jury might draw inferences of negligence on the part of the defendant. Careful control was exercised and strict limitations applied. Some parts of the evidence were direct, some parts of it circumstantial, and other parts conflicting. Much of plaintiff's evidence remained uncontradicted while defendant's testimony was limited largely to negation. There were admissions and certain testimony on the part of defendant's witnesses favorable to the plaintiff. The evidence as a whole provides an ample base for fact determination by jury. A careful examination of the court's charge as a whole leaves the impression that it was fair to both sides and free from prejudicial error. We have carefully considered all of defendant's assignments of error giving rise to the legal issues submitted. Those not discussed at any length, are

largely evidentiary and concerned with the rulings at the trial below. We think the rulings of the trial court were without prejudicial error. The record indicates that the case was fully tried on both sides and the cause submitted under proper instructions. The order of the trial court should be affirmed.

Affirmed.