Dorothy Jean RAMSEY and Wayne A. Ramsey, her husband, Plaintiffs,

v.

MELLON NATIONAL BANK & TRUST COMPANY, Defendant.

Civ. A. No. 62–235.

United States District Court
W. D. Pennsylvania.

June 24, 1964.

See also 33 F.R.D. 324.

**2**

Samuel L. Goldstein, Pittsburgh, Pa., for plaintiffs.

Robert Doyle, Pittsburgh, Pa., for defendant.

ROSENBERG, District Judge.

Motions are now here for a new trial and to set aside the jury's verdicts and enter Judgment N. O. V. for the defendant. The action is in this court by reason of an accident which occurred on August 18, 1961 in which Dorothy Jean Ramsey, the wife-plaintiff was injured while emerging from the defendant's branch bank or office at Aliquippa, Pennsylvania. The accident took place on the early afternoon of that day. Mrs. Ramsey had been in the bank and had made a payment on a loan which was owed or due to the defendant bank. The wife-plaintiff was required to pass through two swinging doors which obstructed the defendant's main entrance-exit way in order to reach the street. Immediately outside the door's threshold and on the same level, which was a step higher than the walkway connecting the doorway and the public sidewalk in front of the bank, there existed a platform with a built-in depression for the purpose of receiving the mat. The mat fitted into the depression of the platform and presented the same level as the platform itself. The only difference was that the mat which was laid in this space contained many small holes. The mat, itself, was made up of rubber and fiber.

As the wife-plaintiff came through the swinging door and placed her foot on the outside as a first step, her heel coming down into the mat caught and caused her to fall onto the walkway connecting with the sidewalk. Her husband who had been across the street came over and helped her up, put the things which had fallen out of her purse back again, and helped her back into the bank where she reported to the manager what had happened. He in turn asked her if she wanted to see a doctor and stated that he was going to call Pittsburgh right away and "have that mat changed as my own girls have complained of catching their heel in that mat".

Both plaintiffs subsequently left the bank, took care of some business elsewhere and then came back again because the wife-plaintiff "was feeling awful bad". Mr. Herbert, the manager then suggested that she go to a doctor and also suggested the hospital. The husband-plaintiff took her to the Aliquippa Hospital where she saw Dr. Owens and two days later went back to the emergency room and saw Dr. Owens again. She complained at that time that her back was hurting and that she also had hurt her knee, elbow and ankle. However, because her back continued to hurt, on August 23, 1961, she went to see Dr. Willison at Sewickley, Pennsylvania, which was near her home. He continued to treat her every other day until they left for Florida. In Florida, she consulted Dr. Harvey Weiner and he treated her while they remained in Florida. In March 1962, they came back to Pennsylvania where they intended or expected to stay a month or two with her sister, Mrs. Snyder, although they shortly moved into a house trailer for the temporary stay. While back in Pennsylvania, she went back to Dr. Willison who continued to treat her.

The jury awarded the wife-plaintiff $15,000 damages and the husband-plaintiff $10,000 damages. The defendant now complains that the verdicts should either be set aside and judgment rendered for the defendant, or that a new trial be granted.

Dorothy Jean Ramsey and Wayne A. Ramsey, wife and husband plaintiffs, based their action for damages upon the negligence of Mellon National Bank & Trust Company, the defendant, in failing to provide a mat with holes of sufficiently small diameter to accommodate the wife-plaintiff's shoes at the defendant bank's doorway, and because of the placement by the defendant of the mat in such proximity at the doors as to make it unsafe.

The defendant insists the plaintiffs made no showing of negligence on the

part of the defendant; that the plaintiffs proved the wife-plaintiff's negligence per se in the wearing of such shoes as she did; that the wife-plaintiff's accident was caused by reason of the fact that she wore high heeled shoes or because of a leg or calf injury, and that judgment should have been or should now be entered for the defendant as a matter of law.

There are two phases to the defendant's contention: (a) that there are procedural errors as regards the substance of the action itself; and (b) that an improper burden was placed upon the defendant as regarded the diversity jurisdiction question which it had raised.

As to the first, the defendant contends that (a) there was no negligence on the part of the defendant which could support the verdicts; (b) the wife-plaintiff was chargeable with contributory negligence as a matter of law; and (c) that the verdicts are grossly excessive.

The defendant relies and the plaintiffs agree upon "Restatement of the Law, Torts" § 343 as the law of Pennsylvania governing this case. This reads as follows:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon, if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to give a warning adequate to enable them to avoid the harm * * *".

The defendant cites a number of cases which do not help it. In Yearsley v. American Stores Co., 97 Pa.Super. 275 (1929), a woman plaintiff caught the heel of her shoe in a register grating. There, there was no evidence to prove that the construction of the grating either in the way it rested in the opening or the sizes and construction of its interstices were unusual or not in accord with the ordinary accustomed construction of such appliances.

The defendant also offers as authority Nelson v. Facciola, 197 Pa.Super. 502, 179 A.2d 258, 1962, on the Pennsylvania law as it should guide the instant case. That case is not at all in point. There a stairway, handrail and lighting were the background circumstances by which the wife-plaintiff fell while wearing shoes with three inch high heels only one-eighth inch wide at the bottom.

Another case offered by the defendant is Calligan v. Monongahela City, 272 Pa. 28, 115 A. 869, 1922. Because of a defect in a municipality's street, where the pavement consisted of an iron framework containing round pieces of glass and where for some unstated reason a number of pieces of glass had been removed leaving holes in the pavement, the plaintiff recovered a verdict and the Pennsylvania Supreme Court affirmed the jury's holding. But at page 30 of 272 Pa., at page 869 of 115 A., the opinion contains the following:

"Had the heel of plaintiff's shoe been unusually narrow, and, by reason thereof, it had caught in the hole and she had been injured, the court below could have given binding instructions for defendant, for a municipality is not obliged to anticipate the abnormal, however fashionable it may be or become; * * *".

It is this statement upon which the defendant relies. As I now view this statement, it was mere dicta in 1922, and in any event it does not reflect the circumstances of this case.

The second question in the Calligan case, supra, related to notice to the mu-

nicipality. With that we are not concerned in the instant case.

In Poskin v. Pennsylvania Railroad Company, 177 Pa.Super. 348, 110 A.2d 865, 1955, the question of negligence was raised because of a one-half inch defect in a brick walkway. It was held that the mere happening of the accident was not evidence that the defendant had had notice of the defect in the pavement, and therefore it was not evidence of negligence.

It is my opinion that the instant case is factually controlled by the Pennsylvania law enunciated in Dougherty, Appellant v. Philadelphia National Bank, 408 Pa. 342, 184 A.2d 238, 1962. Similar to the occurrence in our case, a woman plaintiff had in the words of Mr. Justice Cohen, 408 Pa. at page 343, 184 A.2d at page 239, " * * * pushed one of the doors open, took one or two steps into the interior of the bank, slipped and fell." The inside floor where the plaintiff fell had been wet because of snow and ice which had been tracked into the bank, and which the defendant had failed to mop up. Verdicts of the jury for the wife-plaintiff and for the husband-plaintiff were set aside by the trial court and judgments N. O. V. were entered for the defendant on the holding that the wife-plaintiff was guilty of contributory negligence as a matter of law, "since she stated that she did not look down at the floor to search for water immediately before walking through the glass door into the Bank's floor." The Supreme Court of Pennsylvania held this to be error. At the bottom of page 344 and the top of page 345, 184 A.2d at page 239 Mr. Justice Cohen said this:

"Our court has stated on many occasions that contributory negligence as a matter of law should be declared only in a very clear case and only where the evidence of such is so clear and palpable that there is no room for fair and sensible men to differ in their conclusions as to its existence. McKniff v. Wilson, 404 Pa. 647, 172 A.2d 801 (1961); Elbell v. Smith, 357 Pa. 490, 55 A.2d 321 (1947). This is not such a case. There is, of course, a doctrine holding that if one fails to observe that which is plainly observable and as a result falls and suffers injuries that recovery will be disallowed because of contributory negligence. This rule should not apply in this case because reasonable men could differ as to whether one in the process of opening a door is acting negligently in not observing the condition of the floor immediately adjacent to the door. One's attention is occupied with the mechanical process of opening the door and is seldom diverted at that time to the area which is immediately adjacent to the door.
* * * "

As regarded notice, the Supreme Court held that the bank had taken the precaution of placing a rubber mat throughout part of the room and had an employee assigned to mop the area in which the appellant fell and this presented evidence for a jury's determination on the question of notice. "Under such a situation", it is stated at the bottom of page 345, 184 A.2d at page 23, "it can readily be seen that the jury's determination of both the negligence and the notice of the condition should not have been disturbed." Mr. Justice Cohen at page 346, then fully discusses the law and the authorities as they relate to contributory negligence under such circumstances as being a question for the jury's determination.

I am, therefore, in agreement with the plaintiffs that the California case of Blumberg et ux. v. M. & T., Inc., et al., 34 Cal.2d 226, 209 P.2d 1, 4, is a case in point on the facts and the law, being in accord with § 343 of the Restatement of Law, Torts, and with the thinking of both the plaintiffs and the defendant as the governing law for the determination of the instant case.

In the Blumberg case, supra, there were persons invited to see the office of a tenant of a certain building as business visitors. The tenant's invitee fell because of a floor mat contained in the building. The floor mat had openings of

such a size as to allow the invitee's shoe heel to sink into it, and it became wedged in the mat in the same manner as in this case. The same question was raised there as here.

In the instant case the element of notice is also disputed. On the side of the plaintiffs, there is evidence that the defendant's agent and manager of the bank, Mr. Herbert, had admitted that the mat had caused trouble with some of the girls when they tripped on it. There is also evidence of the mat manufacturer and salesman, Peter J. Weisen, going to the bank representative and informing him that women's shoe styles were now including smaller heels and that the mat in front of the bank entrance was inadequate for these styles.

On the side of the defendant, there is evidence that the manager, Mr. Herbert, did not make any admission to the Ramseys that the mat had caused several of his girls to fall. And there is evidence on this side also, that the mat manufacturer and salesman had never come to the bank representative and told him of the inadequacy of the mat. The evidence on the defendant's side is also to the effect that the plaintiffs had not established that Mr. Herbert was the bank's manager at the time of Mrs. Ramsey's fall, when the accident was supposed to have taken place, and that, therefore, there could have been no admission by Mr. Herbert which would bind the defendant. Defense counsel had raised this by cross-examination but as quickly permitted evidence to go in that Herbert was in fact the manager at the Aliquippa bank.

■ With evidence before it on the matter of notice and on the matter of negligence and contributory negligence, the jury had substantial and abundant evidence to support it in the findings that it made. It had also additional evidence to which counsel for the defendant makes no allusion, that is the evidence which attempted inferentially to show that the wife-plaintiff's accident did not happen because of the mat but because of either the tight shoes which she had been wearing or because of a physical incapacity presumably caused by an old injury to the calf, which the wife-plaintiff testified had nothing to do with this particular episode. From all of this, it is obvious that the jury had questions of fact before it and evidence upon which to make a determination. That it made its determination in favor of the plaintiffs is supported by ample testimony. I cannot say that the jury's findings were erroneous, or that they were contrary to the evidence.

The defendant argues two other matters as indicating error by the trial judge: first, that the law of Pennsylvania as it is applied to gratings on sidewalks should be controlling in this case and the jury should have been instructed accordingly; and second, that women's narrow heeled shoes as such summarily present evidence of contributory negligence based upon so-called "spiked shoe" cases in Pennsylvania.

■ I am in accord with neither of these arguments. As to gratings and the like on sidewalks, the situation is not at all comparable. In the case of gratings, it is to be presumed that one has visibility at all times, and furthermore, the gratings present in themselves a wide variety of hazards that practically stare the pedestrian in the face. These obvious hazards place the pedestrian on notice before she is required to take a step.

That was not the situation here. In our case, as we have already stated, the wife-plaintiff was required to move through the doorway beyond which she could not see and which diverted her attention. Her first step was not upon a grating, but rather upon a mat which did not present the clear visibility of hazard that the grating does. This situation was less obvious and less patent than that of the grating.

■ As to the second argument about narrow heels, it will be seen in the evidence of this case that the shoes involved here were not spike heeled shoes, but rather what were known as "baby doll" heels. It is also obvious in the case that

there are any number of kinds of heels attached to the various kinds of shoes which women wear. With the majority of these we are not concerned, but so far as "baby doll" heels are indicated by the evidence, they are different from spike heels. Spike heels are an inch or so higher than "baby doll" heels which are medium heels of thicker proportions.

In any event, sufficient evidence was presented before the jury to establish factual questions for its determination based upon all of the circumstances of the case, rather than to have presented a question of law for the trial court to determine. The jury was comprised of both men and women and it is obvious that the jurors had sufficient evidence in regards to the issues and adequate instructions of law from the trial judge. The jury adequately distinguished the differences involved and determined whether or not there was any contributory negligence on the part of the wife-plaintiff.

■ As for the defendant's objection to the jury's verdict of $15,000 for the wife-plaintiff and $10,000 for the husband-plaintiff, as being grossly excessive, there is no evidence to support such an objection. It could be that if I were the trier of the facts the amount of damages that I might have awarded would have been different but that determination was placed in the hands of the jury and it was properly the one to make a determination of the damages. It had substantial evidence before it to support its findings. The injuries to the wife-plaintiff were considerable and consisted of a back injury with a probable herniated disc and related consequences and disabilities past and future. The jury had before it evidence of pain, suffering and inconvenience of the wife-plaintiff. So, too, there was sufficient evidence to support its finding for the husband-plaintiff for past doctor bills and possible future doctor bills, and the loss of the wife's service and consortium, both past and future. I cannot say that the amounts awarded by the jury to the plaintiffs are unreasonable under the circumstances.

Under such circumstances, the trial judge may not set aside the verdicts. Werthan Bag Corporation v. Agnew, C.A. 6, 1953, 202 F.2d 119, 122; Schirra v. Delaware L. & W. Railroad Co. (M.D. Pa., 1952), 103 F.Supp. 812, 820; Lind v. Schenley Industries, Inc., C.A. 3, 1960, 278 F.2d 79, 89.

■ The second phase of this case revolves about the question of diversity of citizenship and whether or not there was jurisdiction in this United States District Court. Undoubtedly, the burden of proving diversity of citizenship is upon the plaintiff. McNutt v. General Motors Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Jardine v. Intehar, (D.C.W.Va., 1963), 213 F. Supp. 598.

However, this case presented unusual and distinguishing circumstances. Suit was initially filed on April 2, 1962 and in their complaint, the plaintiffs alleged the existence of diversity of citizenship. The defendant filed its answer on April 26, 1962 and admitted the existence of diversity between the parties. In its pretrial narrative statement as filed on August 10, 1962, the defendant failed to raise this issue. In the pre-trial stipulation filed on December 31, 1962, again, the defendant expressly admitted that the plaintiffs were citizens of the State of Florida. Finally, at the pre-trial of the case heard on January 3, 1963, the defendant agreed to the existence of diversity jurisdiction.

It was not until May 7, 1963 that the defendant by a motion to dismiss contested the existence of diversity jurisdiction. This motion only questioned the citizenship of Wayne Ramsey, one of the plaintiffs, and requested that his claim be dismissed. By order of court dated May 31, 1963, the determination on the issue of diversity jurisdiction was in effect continued until the time of trial. When counsel appeared before the trial judge in chambers, before the matter was presented to the jury, two questions were raised: first, whether or not the diversity question should be presented for determination to the jury or to the trial

judge; and second, whether or not the burden rested upon the plaintiffs or upon the defendant. The plaintiffs desired to put the question to the jury and the defendant desired to put the question before the trial judge. I determined that I would put the question before the jury for its advisory opinion.

█ As to the question of burden, I, of necessity, had to rely upon the pre-trial pleadings as supplementing the original pleadings in this case. Because in the pleadings of this case the defendant admitted diversity of citizenship and jurisdiction on that ground, and because of tardiness of the defendant in raising this issue without any explanation of why it was not raised within reasonable or normal discovery time, I concluded that the defendant had put the plaintiffs to rest on their burden; and when the defendant reviewed the issue and tardily put the plaintiffs in a more difficult position, the circumstances had changed sufficiently to put responsibility upon the defendant. When the defendant subsequently changed its mind as to the question of citizenship after it had lulled the plaintiffs into the belief that no proof would be required of them on that issue, it is my opinion that it then assumed the burden of this defense. Merely because jurisdiction is involved, it does not follow that the defendant cannot waive this defense. Di Frischia v. The New York Central Railroad Company, C.A. 3, 1960, 279 F.2d 141. In that case our Court of Appeals stated at page 143:

> " * * * Defendant's action amounted to a striking of its defense of lack of jurisdiction and an admission of the jurisdictional facts alleged by plaintiff in his complaint. * * * "

█ Yet despite these circumstances, I permitted the defendant an opportunity to present this defense to the jury for its advisory opinion. It is to be noted that there is no right of trial by jury on the issue of whether there is jurisdiction of the subject matter such as diversity. Gilbert v. David (1915) 235 U.S. 561, 568, 35 S.Ct. 164, 59 L.Ed. 360; Guarantee Trust Co. v. Collings, C.A. 3, 1935, 76 F.2d 870, cert. den. 295 U.S. 747, 55 S.Ct. 825, 79 L.Ed. 1692; Romero v. International Terminal Operating Co. (S.D. N.Y., 1956), 142 F.Supp. 570. In Moore's Manual, Federal Practice and Procedure, § 22.01(7), P. 1591, it is stated:

> " * * * If, however, there is a submission the jury verdict should be regarded only as *advisory* since there is no right of jury trial." (Emphasis supplied)

█ After reviewing the record, I am convinced that the advisory opinion of the jury is basically sound and that the plaintiffs in fact sustained any burden of proof in establishing this existence of citizenship by introducing more than a preponderance of the evidence on the issue of the plaintiffs' citizenship at the time of the filing of this suit. The plaintiffs' evidence was of such weight that this Court, in the exercise of its discretion, could well have ruled on this issue as a matter of law at the conclusion of all the evidence in the case and without submitting the issue to the jury for determination, that the plaintiffs were, in fact, citizens of the State of Florida at the time of the filing of this action. McNello v. John B. Kelly, Inc., C.A. 3, 1960, 283 F.2d 96. In the McNello case, McNello did not even attempt to register to vote in Florida and, in fact, only resided in Florida from June 1955 to August 1955. In the instant case the plaintiffs not only resided in Florida prior to the institution of this action, but also were citizens of Florida at the time they filed this action and at the time of trial.

For all of these reasons, tthe defendant's Motion to Set Aside Verdicts and Judgments Entered Thereon and For Entry of Judgment in Accordance with Defendant's Motion for a Directed Verdict will be denied.