## PAULYNE M. COGSWELL v.
## U. S. S. YORKTOWN POST 178, VFW, AND ANOTHER.

143 N. W. (2d) 45.

May 13, 1966—Nos. 39,923, 40,046.

*Bonner, Bonner & Clements,* for appellant.

*Faegre & Benson, Paul J. McCough,* and *W. James Fitzmaurice,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by Paulyne M. Cogswell against Gopher Pup Tent #2 of the Military Order of the Cootie of the United States, Grand Pup Tent of Minnesota, a corporation, for damages resulting from plaintiff's fall down the basement stairway of a building under defendant's control. The jury returned a verdict in defendant's favor. On appeal from the judgment, it is plaintiff's contention that the court erred in permitting the jury to determine whether plaintiff had assumed the risk from which her damages resulted.

The accident happened on December 9, 1961, at approximately 8:30 p. m. while plaintiff was a business visitor in defendant's building located at 2902 Chicago Avenue South, Minneapolis. The stairway to the basement down which plaintiff fell is sufficiently wide so that handrails have been installed on the adjacent walls from the landing to the bottom of the steps. Plaintiff testified that her fall occurred just as she turned from the landing to go down to the basement; that at the time she was aware that the landing was wet and slushy; that as she walked upon it and turned to her right to go down the steps her foot had slipped and at the same time the heel of her shoe had caught on the metal stripping of the landing so that she had fallen forward and down to the bottom step. Her specific testimony on this was as follows:

"Q. * * * Now, when you reached the landing and you made the observation what did you see?

"A. I know there was water on the landing. It was wet.
* * * * *

"Q. It is your testimony that when you reached the landing * * * you observed the landing, itself, and it was covered with water?

"A. There was water, yes, on the landing.

\* \* \* \* \*

"Q. All right. The whole area was wet and slushy?

"A. Yes.

"Q. And you observed that?

"A. Yes, I saw that.

\* \* \* \* \*

"Q. \* \* \* And I take it you weren't surprised to see the landing in this condition having observed it but an hour or so before?

"A. No.

\* \* \* \* \*

"Q. Now, after reaching the landing, you took, I think you said, two or three steps?

"A. Yes.

\* \* \* \* \*

"Q. And you realized the landing was wet having been walking in it?

"A. Yes.

\* \* \* \* \*

"Q. You would reach the landing, then turn to the south, then you would turn to the west, and you were facing to the west when the accident occurred?

"A. Well, the accident happened just as I took my third step and I slid and my foot skidded and it caught the top of the stair and I went down the stairs.

\* \* \* \* \*

"Q. Now, as you were in that position facing west you could see down the stairway, I assume?

"A. I didn't get a chance to look down the stairs.

"Q. \* \* \* Now, not having had an opportunity to look down the stairs, I assume that you did not see the place where you fell \* \* \* ?

"A. No. I know that I fell from the top. I know that I fell from the landing.

"Q. \* \* \* I am talking about the actual spot on the floor from which you fell. You did not see that, did you, before you fell?

"A. No, but I felt it.

\* \* \* \* \*

"Q. All right. Now, you say you felt it. Did you feel your heel slip?

"A. No, my foot slipped, the front of my foot slipped and I slid a little bit and my heel caught the metal stripping on the top stair.

"Q. When did you see this metal stripping on the top stair?

"A. Well, I saw it after we came back up."

The evidence disclosed that on the day of the accident there had been a snowstorm and that defendant's custodian had mopped the landing and stairway some time before plaintiff's arrival; that when plaintiff and her husband had first arrived to attend a Christmas party on the premises they had used the stairway and observed its wet and slushy condition; and that shortly before the accident plaintiff had replaced the boots she was wearing with shoes that she had brought with her which had spike heels measuring 3 inches from the top to the base of approximately ½ inch in diameter.

At the close of the testimony, plaintiff's counsel moved that the court withdraw as an issue any claim that plaintiff had assumed risk of injury in using the stairway on the ground that there could have been no assumption of risk since defendant had failed to provide an alternate route to the basement. This motion was denied, and in its instructions on this issue, the court charged the jury as follows:

"I shall now explain to you what is meant by assumption of risk. Assumption of risk is voluntarily placing oneself in a position to chance known hazards. To find that a person assumed the risk you must find, first, that she had knowledge of the risk; second, that she appreciated the risk; third, that she had a chance to avoid the risk or chance it and voluntarily chose to chance it.

"\* \* \* Assumption of risk does not involve a failure to use reasonable care. A person who assumes the risk is one who voluntarily chooses to chance a danger which is known and appreciated. Contributory negligence does involve a failure to use reasonable care. A person who is contributorily negligent is one who has failed to use that care which a reasonable person would use under like circumstances. A person who is guilty of contributory negligence or assumption of risk cannot recover

if that contributory negligence or assumption of risk was a direct cause of the accident.

"If * * * you find that the defendant was negligent, and that that negligence was a direct cause of the accident * * * and that plaintiff was not contributorily negligent or was not guilty of assumption of risk * * * then plaintiff would be entitled to recover * * *."

Later, after the cause had been submitted, the jury returned for additional instructions. The following then took place:

"The Foreman: We would like to have you read or clarify the part that you read on contributory negligence, especially as far as the plaintiff is concerned, and the part about assuming the risk."

The court thereupon again read to the jury the instructions on contributory negligence and those on assumption of risk which are above set forth.

"Voice [juror]: Could you define for us the word 'hazard.'
"The Court: I don't think it's necessary to define the word 'hazard.' I think that's something that you can discuss among yourselves.
"Voice: It has been a great point in our arguments. If we had a dictionary so that we could read what it says—
"The Court: I think you should go back and endeavor to resolve the case on the evidence and the law as the Court has given it to you."

Subsequent to the verdict in defendant's favor, plaintiff moved for an order setting it aside and granting a new trial on the ground that the court erred in submitting the issue of assumption of risk. In a memorandum attached to its order denying this motion, the court stated:

"The plaintiff contends that the case of Donald vs. Moses, 254 Minn. 186, is controlling, and * * * that the court committed error by submitting assumption of risk when there was no available choice by the plaintiff whereby the risk may have been avoided. However, it appears to the court that assumption of risk should have been submitted where a plaintiff voluntarily incurred a known hazard or one that a reasonably prudent person should have comprehended. * * *

"Plaintiff * * * had been down into the basement when she first en-

tered the building. She then noticed the snow and slush on the landing and on the steps. She came back upstairs, walked through the slush and up to the second story. Handrails were available to her in going up and down the steps, but not on the landing, although the wall was available to her as a support if that became necessary. She realized when she came down the steps the slushy conditions and the ice and slipperiness which she claimed caused her fall. Having voluntarily chosen to incur it it appears to the court that assumption of risk was properly submitted to the jury."

■ On appeal plaintiff renews her contention that plaintiff could not be charged with assuming the risk of danger in her use of the stairway because no other route was available for her. Ordinarily the defense of assumption of risk is available against a plaintiff who, with knowledge of the risk involved in a course of conduct and having the opportunity to either incur or avoid it, voluntarily chooses to incur it. 13B Dunnell, Dig. (3 ed.) § 7041a3.

■ It is true that where a hazardous route is undertaken by a person because no other choice is available the defense of assumption of risk cannot be asserted against him. Donald v. Moses, 254 Minn. 186, 94 N. W. (2d) 255. In the instant case the jury might reasonably find that plaintiff, aware of the danger involved in stepping on a wet and slushy stairway in spike heel shoes, could easily have avoided the risks attendant upon this situation by simply grasping the handrail adjacent to the stairway on her right-hand side as she prepared to descend. She did not do this but walked some two or three steps beyond the handrail before she turned to go down, thus disregarding the protection it might have afforded her. This situation would seem to make applicable our statement in Syverson v. Nelson, 245 Minn. 63, 68, 70 N. W. (2d) 880, 883, as follows:

"Knowledge of the physical characteristics of common substances come to all men of average intelligence in the ordinary course of life. Some of these are that fire will burn; that water will drown; that water makes a floor slippery; and that a human being is liable to slip and fall in slippery places. McGowan v. La Plata Min. & Smelting Co. (C. C. D. Colo.) 9 F. 861; 23 Minn. L. Rev. 650."

Many of the features of the instant case are similar to those in Geis v. Hodgman, 255 Minn. 1, 95 N. W. (2d) 311, where we held, as a matter of law, that plaintiff had assumed the risk of injury in stepping on a portion of a driveway upon which she knew there were patches of smooth ice, and where she could have avoided any risks by using another portion of the driveway. There we said (255 Minn. 11, 95 N. W. [2d] 318):

"The evidence * * * is conclusive that plaintiff walked on the part of the driveway that was safe in going to the mailbox; that on the way back she chose to step on a patch of smooth ice which she knew was there and which she knew was slippery; that the same icy condition had existed for at least several days, all to her knowledge; and that she had more knowledge of the condition of the driveway than her employer did, yet she did not complain to him or request that he do something about it. Under these circumstances * * * under the applicable law she assumed the risk of falling when she stepped on the patch of ice and * * * she is not permitted to recover for injuries sustained by reason thereof."

Under the foregoing principles and citations, we conclude that the court did not err in submitting the issue of assumption of risk to the jury. See, Lyon v. Dr. Scholl's Foot Comfort Shops, Inc. 251 Minn. 285, 87 N. W. (2d) 651; Vosbeck v. Lerdall, 245 Minn. 164, 72 N. W. (2d) 371; Lincoln v. Cambridge-Radisson Co. 235 Minn. 20, 49 N. W. (2d) 1; Jewell v. Blanchett Investment Co. 199 Minn. 267, 271 N. W. 461; Beckjord v. First Presbyterian Church, 196 Minn. 474, 265 N. W. 336.

Affirmed.